# Weaver et al., Appellant, *v.* Shenk et al.

*Equity—Specific performance of personal contract—Jurisdiction.*

The Supreme Court will of its own motion dismiss a bill in equity which is a mere attempt to enforce specifically a personal contract for which there is an adequate remedy at law.

*Contract uncertain in terms—Patent—Practical operation.*

An agreement, in consideration of a half interest in a patent for railroad switch points and frogs, to " furnish and pay all moneys necessary to procure the patent and to put the same into practical operation," without naming the amount, or stating what is meant by the words " practical operation " or the word " necessary," cannot be specifically enforced in equity.

Argued Feb. 15, 1893. Appeal, No. 115, Jan. T., 1893, by plaintiffs, Isaac D. Weaver et al., from decree of C. P. Lebanon Co., No. 3, Eq. Docket, 1892, dismissing bill in equity filed against J. M. Shenk et al. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and McCOLLUM, JJ.

Bill in equity to enforce specific performance of contract.

The contract sought to be enforced was as follows:

" Whereas, Isaac D. Weaver and C. M. Bowman, of Lebanon, Pennsylvania, are about to make application to the United States Patent Office for a patent for the manufacture of Railroad Switch Points and Frogs.

" And, whereas, also, J. M. Shenk and Thomas Evans are anxious to have a one half interest in the same before the issuing thereof ; and, also, of all the improvements and extensions of the same to be hereafter made. Now it is agreed by

and between the said parties, that if the said J. M. Shenk and Thomas Evans shall and will furnish and pay all moneys necessary to procure the patent and to put the same into practical operation as soon as application shall have been made for said patent; (and that all moneys required for the purpose aforesaid, and all payments made, vouchers shall be taken for the same, and the said vouchers shall be delivered by the said Bowman and Weaver to the said Shenk and Evans, and be kept by them;) that then, upon their said promise, in this said agreement contained, the said patent shall and will issue to the said Isaac D. Weaver, C. M. Bowman, J. M. Shenk and Thomas Evans, their legal representatives and assigns."

On demurrer to bill the court filed the following opinion by McPHERSON, J.:

" This bill cannot be sustained, because the agreement which we are asked to enforce is so vague and uncertain that specific performance cannot be compelled. In the first place, we do not know with sufficient certainty what is the subject of the agreement. That paper calls it ' a patent for the manufacture of railroad switch points and frogs,' and from this language one would naturally infer that the thing to be patented was a process and not a tangible article. The same inference would probably be drawn from the language of the assignment, although nothing is there said about frogs, and the thing. to be patented is somewhat differently described as ' certain and useful improvements in the manufacture of switch points.' The patent itself, however, as described in the bill, was issued to protect ' an alleged new and useful improvement in rolls for rolling switch points,' and this seems to be a patent of a tangible article, and not of a process. Perhaps the discrepancy is only apparent, and the real subject may be the same throughout; if so, it must be the thing described in the patent, viz.: an improvement in rolls for rolling switch points.

" But, if we assume this to be true and thereby waive any objection on account of uncertain description of the subject-matter, a much more serious objection remains. What is meant by the practical ' operation ' of this patent? Would this phrase be satisfied if only one pair of points was rolled, thus in one sense practically operating the patent, although the manufacture was thereupon abandoned; or does it require that a plant

should be established for the purpose of continuously making switch points by means of these improved rolls? If a plant must be established, how large must it be and how many sets of rolls must it contain in order to be in practical operation? Further, the defendants agree to pay all moneys 'necessary' to put the patent into practical operation. What is meant by necessary? Barely necessary, or a full and liberal provision? If a plant is necessary, where is it to be, and according to what design is it to be built? Who is to superintend its construction and management? And, finally, who is to decide these questions—and many others which might be asked—when the inevitable difference of opinion arises? The plaintiffs aver that $65,000 is necessary, thus undertaking to decide the questions for themselves, but obviously their mere naked averment is not sufficient, even upon demurrer. Without stating other reasons, it is enough to say that the court must first know what is meant by 'practical operation' before the prima facie 'necessity' for $65,000 could be determined, and as already declared we are unable to fix the boundaries of either phrase.

" If this view is correct, further discussion is needless. The terms of this agreement are not clear and certain, and are therefore incapable of enforcement in equity: Hammer v. McEldowney, 46 Pa. 334; Waterman, Spec. Perf., ch. 3, and the elaborate note to Atwood v. Cobb, 26 Am. Dec. 661, from which we quote the following statement of the general rule: 'It is now well settled that the court will not make out a contract for the parties ex equo et bono. Whether the contract be such as is provable by parol, or is required by the statute of frauds to be in writing, it must be certain and unequivocal in all its essential terms, either within itself or by reference to some other agreement or matter, or it cannot be specifically enforced,' and this is supported by many authorities.

" The demurrer is sustained and the bill is dismissed at the costs of the plaintiffs."

*Error assigned* was in sustaining demurrer, and in dismissing bill.

*Thos. H. Capp, Geo. B. Schock* and *Chas. M. Zerbe* with him, for appellant, cited: Sterling's Ap., 111 Pa. 39; Lindley on

Partnership, Wentworth's ed., 478; Somerby v. Buntin, 118 Mass. 279; Gillett v. Hall, 13 Conn. 426; Pirtle v. Penn, 3 Dana, 248; Bispham's Eq. § 507; Story, Partnership, § 189.

*Wm. M. Derr,* for appellees, cited: 2 Beach, Equity, § 582; Hammer v. McEldowney, 46 Pa. 334; Ballou v. March, 133 Pa. 64; Bodine v. Glading, 21 Pa. 50; Meason v. Kaine, 63 Pa. 335; William Rogers Manf. Co. v. Rogers, 58 Conn. 356; Mapleson v. Del Puente, 13 Abb. N. C. (N. Y.) 144; Haight v. Badgeley, 15 Barb. 499; Rutland Marble Co. v. Ripley, 10 Wall. 339; Wollensak v. Briggs, 20 Ill. Ap. 50; Ross v. Union Pacific Ry. Co., 1 Wool. 26, 44; Blackett v. Bates, L. R. 1 Ch. Ap. 117; Texas & Pacific Ry. Co. v. Marshall, 136 U. S. 393.

PER CURIAM, February 27, 1893:

We are of opinion that the learned judge below was right in sustaining the demurrer and dismissing plaintiffs' bill. The reasons which he has given are entirely sufficient, to which might have been added the further reason, that the court had no jurisdiction. The bill was a mere attempt to enforce specifically a personal contract for which there is an adequate remedy at law. We have in more than one instance, of our own motion, dismissed such bills as this for want of jurisdiction, and would do so in this case were it necessary.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.